UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY A. ALMADA, on behalf of himself an all others similarly situated class members,<br><br>Plaintiff,<br><br>v.<br><br>KRIGER LAW FIRM, A.P.C.,<br><br>Defendant. | Case No.: 19-cv-2109-MMP<br><br>**ORDER:**<br><br>1. **GRANTING IN PART AND DENYING IN PART PLAINTIFF'S UNOPPOSED MOTION FOR SECOND DISTRIBUTION FROM RESIDUAL COMMON FUND AND FINAL APPROVAL OF CY PRES BENEFICIARIES; AND**<br><br>2. **VACATING HEARING**<br><br>[ECF No. 85] |

Pending before the Court is Plaintiff Jeffrey A. Almada's Unopposed Motion for a Second Distribution from the Residual Common Fund and Final Approval of *Cy Pres* Beneficiaries. [ECF No. 85.] Defendant did not file an opposition.[1] For the reasons stated

---

[1] Civil Local Rule 7.1(f)(3)(c) provides "Waiver: If an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the Court." Because Defendant did not file an opposition, the Court may conclude by virtue of this rule Defendant consents to the Court's granting the motion.

herein, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's motion and **VACATES** the hearing on this matter.

I.     RELEVANT BACKGROUND

On November 4, 2019, Plaintiff Jeffrey A. Almada ("Plaintiff") filed a putative class action against Defendant Kriger Law Firm, A.P.C. ("Defendant") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code sections 1788 to 1788.32. [ECF Nos. 1, 15.] On January 30, 2023, the Court issued an Order Granting Final Approval of Class Action Settlement and Judgment, approving the Settlement[2] between the parties. [ECF No. 83 ("Final Approval Order").] The Court found the Settlement provided each of the 260 participating Settlement Class Members[3] would be issued a check in the amount of $507.11. [*Id.* ¶ 9.] In approving the Settlement, the Court also ordered "[s]hould any funds remain in the Common Fund after the Cash Settlement payments" are distributed, "Class Counsel shall file a formal motion with the Court indicating the amount to be distributed and discussing, in more depth, the proposed *cy pres* recipients' respective qualifications to receive such distribution." [*Id.* ¶ 14.] The Court also "preliminarily approve[d] The National Consumer Law Center and Public Justice as the proposed *cy pres* recipients to share any remaining funds in equal parts." [*Id.*]

---

[2] The Agreement has been filed with the Court at ECF No. 75-3. Unless otherwise specified, defined terms or capitalized terms in this Order have the same meaning as in the Settlement Agreement. [*See* ECF No. 83 ¶ 7, n. 1.]

[3] This number is made up of the following: 272 Settlement Class Members were identified in the "Class List" to receive Notice; Notice Packets for only 11 Settlement Class Members were ultimately returned as undeliverable because an alternate or better address was unattainable after conducting a skip trace, and there was 1 valid exclusion. [ECF No. 83 ¶ 8.]

In support of the current motion, Plaintiff filed a declaration from Simpluris, Inc. ("Simpluris"), the Settlement Administrator in the above-entitled action, regarding the final accounting of the Settlement thus far. [*See* ECF No. 85-4, Declaration of Meagan Brunner of Simpluris, Inc. ("Brunner Decl.") ¶ 1.] Pursuant to the terms of the Settlement Agreement and the Court's Final Approval Order, Settlement checks in the amount of $507.11 were mailed to the 260 participating Settlement Class Members. [*Id.* ¶ 4.] The check cashing period expired on September 13, 2023, and sixty-five (65) checks remained uncashed, totaling $32,962.15[4] in uncashed funds in the Common Fund. [*Id.* ¶¶ 6–7.]

Plaintiff now moves for the Court's authorization of a second distribution from the Common Fund to the 195 Settlement Class Members who cashed their initial Settlement checks, which would result in an additional check in the amount of approximately $154.90 after deducting $2,756 in administrative costs. [*Id.* ¶¶ 8–9.] Plaintiff also seeks authorization for distribution of any unclaimed funds remaining after the second distribution in equal parts to two preliminarily approved *cy pres* recipients, The National Consumer Law Center ("NCLC") and Public Justice ("PJ"). The Court addresses Plaintiff's two requests in turn.

## II.  SECOND DISTRIBUTION

Where class actions are resolved via settlement, "money often remains in the settlement fund even after initial distributions to class members have been made because some class members either cannot be located or decline to file a claim." *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1110 (9th Cir. 2021) (quoting *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 473 (5th Cir. 2011)). The Ninth Circuit has recognized numerous potential alternatives for distributing unclaimed settlement funds, including *cy pres* distribution, escheat to the government, reversion to defendants, and "additional pro

---

[4] Of the sixty-five (65) uncashed checks, twelve (12) checks were undeliverable. [Brunner Decl. ¶ 7.]

rata distributions to those class members who did claim funds." *Id.* at 1110–11; *see also Six (6) Mexican Workers*, 904 F.2d 1301, 1307, n.4 (9th Cir. 1990).

A district court has "broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds" and its "choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members." *Six (6) Mexican Workers*, 904 F.2d at 1307. "Although the terms of a settlement agreement may dictate how unclaimed settlement funds should be allocated, a district court may otherwise exercise its equitable powers in managing the distribution of the settlement proceeds." *Connor v. JPMorgan Chase Bank, N.A.*, No. 10-cv-1284, 2021 WL 1238862, at *1 (S.D. Cal. Apr. 2, 2021).

Here, the Settlement Agreement provides in relevant part:

> If any portion of the Common Fund remains unclaimed, or any check sent to any Settlement Class Members remains uncashed after it is no longer administratively feasible to provide for an additional distribution [to] Settlement Class Members, then such unclaimed or uncashed funds will, subject to approval by the Court, become part of the Common Fund for *cy pres* distribution in equal parts to any c*y pres* recipients.

[Settlement Agreement § III.U.][5] Thus, the Settlement Agreement specifically contemplates a *cy pres* distribution only after it is no longer administratively feasible to provide an additional distribution to Settlement Class Members. *Id.* Plaintiff contends though the Settlement Agreement does not expressly provide for a second distribution, the parties also did not anticipate sixty-five (65) Settlement Class Members would not cash their checks, resulting in $32,962.15 in unclaimed funds, which is a substantial amount compared with the size of the Settlement Class. [ECF No. 85-1 at 9.] Further, Plaintiff asserts as "it *is* economically feasible to conduct a second distribution to the 195 Settlement Class Members who cashed their initial settlement check, a distribution to the proposed *cy*

---

[5] The Settlement also provides Defendant has no reversionary interest in any portion of the Common Fund. [Settlement Agreement § III.G.i.]

*pres* beneficiaries is not appropriate under the Settlement Agreement until *after* a second distribution occurs." [*Id.*] Thus, Plaintiff asserts a second distribution is proper and does not run afoul of the Settlement's intent.

The Court finds a second distribution is administratively feasible given the amount of uncashed funds, $32,962.15, remaining in the Common Fund, which would cover the administrative costs associated with the second distribution in the amount of $2,756 and thus result in a non-*de minimis* payment of approximately $154.90. The Court also agrees the second distribution should be limited to the 195 Settlement Class Members who cashed their initial Settlement checks, as it is unlikely those who did not cash their check in the amount of $507.11 would cash a check for a smaller sum in the amount of $154.90. *See In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th at 1110–11; *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2017 WL 11837070, at *3 (S.D. Cal. Aug. 1, 2017); *Connor*, 2021 WL 1238862, at *2 n.3.

Finally, the Court finds a second distribution not only is consistent with the terms of the Settlement Agreement but also directly benefits class members and is thus preferable to a *cy pres* distribution under these circumstances. In *Klier v. Elf Atochem North America Incorporated*, 658 F.3d 468, 475 (5th Cir. 2011), a case cited by the Ninth Circuit as an example of permitting additional pro rata distributions to class members who previously claimed funds, the Fifth Circuit explained:

> Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible "only when it is not feasible to make further distributions to class members." Where it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide a windfall to class members . . . A *cy pres* distribution puts settlement funds to their next-best use by providing an indirect benefit to the class. That option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly.

*Klier*, 658 F.3d at 475 (internal citations and footnotes omitted); *see also Connor*, 2021 WL 1238862, at *2 ("Ninth Circuit precedent regarding *cy pres* distributions affirms the Court's view that a second distribution to class members, where possible and not contrary to the aims of the settlement agreement, is often preferable to a *cy pres* distribution") (footnote omitted). For the reasons explained above, the Court finds given the substantial uncashed funds remaining the Common Fund, it is still administratively and economically feasible to make a second distribution to the 195 participating Settlement Class Members, and such an additional distribution is both consistent with and indeed specifically contemplated by the Settlement Agreement. Further, the second distribution would not result in a windfall to the 195 participating Settlement Class Members who cashed their initial checks.[6] Thus, the Court finds a second distribution would further the intent of the Settlement Agreement, as well as put the funds to their best use by benefitting class members directly. Accordingly, the Court **GRANTS** Plaintiff's motion for a second distribution to participating Settlement Class Members.

III.   *CY PRES* **DISTRIBUTION**

Plaintiff concurrently moves for an order approving a *cy pres* distribution of any funds remaining in the Common Fund after the second distribution to the preliminary approved *cy pres* beneficiaries, NCLC and PJ. Plaintiff contends a *cy pres* distribution is proper because the terms of the Settlement Agreement provide for a *cy pres* distribution for any unclaimed funds or uncashed settlement checks in equal parts to NCLC and PJ, a third distribution is not economically feasible, and the Court already preliminarily approved NCLC and PJ as *cy pres* beneficiaries. [ECF No. 85-1 at 11.]

---

[6] Plaintiff previously represented "[t]he maximum statutory damages under the FDCPA and RFDCPA is up to $1,000 per statute (depending on whether the violation is proven to be willful.)." [ECF No. 75-1 at 31 (citing 15 U.S.C. § 1692k(a)(1)-(2)(A) (FDCPA); see also, Cal. Civ. Code § 1788.30(b) (RFDCPA)].

"[F]ederal courts have widely recognized the *cy pres* doctrine as a tool for 'distribut[ing] unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries.'" *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th at 1111 (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). Under the *cy pres* doctrine, class members "benefit—albeit indirectly—from a defendant's payment of funds to an appropriate third party." *Id.* at 1116. In determining whether a proposed *cy pres* beneficiary is appropriate, the court must consider whether the distributions account for (1) the nature of the plaintiff's lawsuit, (2) the objectives of the underlying statutes, and (3) the interests of the silent class members. *Id.* These factors "guide judicial oversight of *cy pres* settlement provisions" and "are designed to ensure that *cy pres* payments particularly 'benefit the plaintiff class.'" *Id.* (quoting *Nachshin*, 663 F.3d at 1036, 1040). Overall, the *cy pres* award must have a "direct and substantial nexus to the interests of absent class members." *Id.* (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012)).

Here, the Settlement Agreement provides "[a]ny unclaimed portion of the Common Fund, as well as any sums allocated to settlement checks that have not been cashed, shall be paid to *cy pres* recipients" as described in Section III, which in turn provides "after it is no longer administratively feasible to provide for an additional distribution [to] Settlement Class Members, then such unclaimed or uncashed funds will, subject to approval by the Court, become part of the Common Fund for *cy pres* distribution in equal parts to any *cy pres* recipients." [Settlement Agreement §§ III.G, III.U.] Thus, as detailed above, the Settlement Agreement provides for a *cy pres* distribution only after "it is no longer administratively feasible to provide for an additional distribution" to participating Settlement Class Members. [*See id.* § III.U.]

Plaintiff contends a third distribution is not economically feasible because, following a second distribution, each participating Settlement Class Member's individual recovery would be *de minimis*. [ECF No. 85-1 at 12.] Plaintiff estimates a third distribution would likely have similar administrative costs as estimated for the second ($2,756) and further

alleges a check cashing rate following a second distribution "could be closer to 90% given the 195 Settlement Class Members who would be receiving this second distribution already cashed their initial check and are likely to also cash a second check." [*Id.*][7] Assuming a 90% cash checking rate and excluding anticipated administrative costs for a third distribution, Plaintiff alleges "a third distribution would likely be no more than $1.95 per Settlement Class Member." [*Id.*]

Plaintiff has not sufficiently established an additional distribution would not be administratively feasible. As a preliminary matter, Plaintiff offers no declaration—from the Settlement Administrator or otherwise—to support his allegations regarding a third distribution including the anticipated check cashing rate. Further, though the Court tends to agree a payment of $1.95 per Settlement Class Member may be *de minimis*, if the check cashing rate for the second distribution is less than the 90% alleged by Plaintiff, an additional distribution may be administratively feasible and non-*de minimis*,[8] and thus consistent with the terms of the Settlement Agreement prior to a *cy pres* distribution. Thus, the Court finds Plaintiff's motion to authorize a *cy pres* distribution is premature at this juncture, without having the benefit of knowing the amount of unclaimed funds, if any, resulting from the second distribution authorized above.

Accordingly, the Court **DENIES without prejudice** Plaintiff's motion for approval of the *cy pres* recipients and a *cy pres* distribution. Upon completion of the second distribution approved above, Plaintiff shall renew his motion for a *cy pres* distribution and

---

[7] Plaintiff also represents the check cashing percentage rate for the initial distribution to the 260 Settlement Class Members was 75%. [ECF No. 85-1 at 12.]

[8] Plaintiff acknowledges several times throughout his motion a payment of $8.19 was held to be not *de minimis*, ECF No. 85-1 at 10, and also relies on another case in which the Court found an additional distribution of $3.07 was not *de minimis*. *See Connor*, 2021 WL 1238862, at *2 (finding second distribution of $8.19 not *de minimis*); *Malta*, 2017 WL 11837070, at *1, 3 (finding additional distribution of $3.07 not *de minimis*).

final approval of *cy pres* beneficiaries, if appropriate, with an accompanying declaration from Simpluris as to the final accounting of the second distribution.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Unopposed Motion for a Second Distribution from the Residual Common Fund and Final Approval of *Cy Pres* Beneficiaries as follows:

1. The Court **GRANTS** Plaintiff's Unopposed Motion for a Second Distribution from the Residual Common Fund and further **ORDERS** as follows:

   a. Payment in the amount of $2,756 shall be distributed from the Common Fund to Simpluris, Inc., the Court appointed third-party Claims Administrator, for the purpose of administering a second distribution **within (7) seven days of the date of this Order**.

   b. A second distribution in equal parts shall be made from the remainder of the Common Fund to the 195 Settlement Class Members who cashed their initial Settlement checks **within forty-five (45) days of the date of this Order**.

2. The Court **DENIES without prejudice** Plaintiff's motion for final approval of *cy pres* beneficiaries and a *cy pres* distribution. Upon completion of the second distribution approved above, Plaintiff shall file a renewed motion for a *cy pres* distribution and final approval of *cy pres* beneficiaries, if appropriate, with an accompanying declaration from Simpluris as to the final accounting of the second distribution.

**IT IS SO ORDERED**.

Dated: May 16, 2024

*[signature]*
HON. MICHELLE M. PETTIT
United States Magistrate Judge