UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY A. ALMADA, on behalf of himself and all others similarly situated class members,<br><br>           Plaintiff,<br><br>v.<br><br>KRIGER LAW FIRM, A.P.C.,<br><br>           Defendant. | Case No.: 19-cv-2109-MMP<br><br>**ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFF'S UNOPPOSED MOTION FOR THIRD DISTRIBUTION FROM THE RESIDUAL COMMON FUND AND FINAL APPROVAL OF *CY PRES* BENEFICIARIES**<br><br>[ECF No. 87] |

Before the Court is Plaintiff's Unopposed Motion for a Third Distribution from the Residual Common Fund and Final Approval of *Cy Pres* Beneficiaries. ECF No. 87. No opposition was filed.[1] For the reasons stated herein, the Court **GRANTS IN SUBSTANTIAL PART** Plaintiff's motion.

**I.  RELEVANT BACKGROUND**

The Court described the background in detail in its May 16, 2024 Order. ECF No. 86. In 2019, Plaintiff filed a putative class action against the Kriger Law Firm, A.P.C.

---

[1] Civil Local Rule 7.1(f)(3)(c) provides "Waiver: If an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the Court." By virtue of this rule, because Defendant did not file an opposition, the Court may conclude Defendant consents to the Court's granting the motion.

("Defendant") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code sections 1788 to 1788.32. ECF Nos. 1, 15.

In January 2023, the Court issued final approval of the parties' Settlement.[2] ECF No. 83 ("Final Approval Order"). The Court also preliminarily approved the National Consumer Law Center ("NCLC") and Public Justice as the proposed *cy pres* recipients to share any remaining funds in equal parts. *Id.* Thereafter, Settlement checks in the amount of $507.11 were mailed to the 260 participating Settlement Class Members. After the 180-day check-cashing period, sixty-five checks remained uncashed and were voided, leaving $32,962.15 in the Common Fund.

In March 2024, Plaintiff filed an Unopposed Motion for a Second Distribution from the Residual Common Fund and Final Approval of *Cy Pres* Beneficiaries. ECF No. 85. On May 16, 2024, the Court approved a second distribution, finding it was administratively and economically feasible to make a second distribution to the 195 participating Settlement Class Members who cashed their initial checks, and an additional distribution was both consistent with and indeed specifically contemplated by the Settlement Agreement. ECF No. 86 at 6. The Court denied without prejudice Plaintiff's request to approve the *cy pres* recipients, finding it premature prior to completing the second distribution. *Id.* at 6–8.

Pursuant to this Court's May 16, 2024 Order, on June 28, 2024, checks in the amount of $154.90 were mailed to each the 195 participating Settlement Class Members who cashed their initial check. ECF No. 87-2 ¶ 3. The check cashing period expired on December 25, 2024 (180 days from issuance). *Id.* ¶ 4. Thirty-six checks[3] remained uncashed for a total of $5,576.40 remaining the Common Fund. *Id.* ¶ 5.

---

[2] The Agreement has been filed with the Court at ECF No. 75-3. Unless otherwise specified, defined terms or capitalized terms in this Order have the same meaning as in the Settlement Agreement. *See* ECF No. 83 ¶ 7, n. 1.

[3] Of those thirty-six uncashed checks, three were returned as undeliverable. *Id.*

|  |  |
|---|---|
| 1 | Plaintiff now moves the Court to approve a third distribution from the Common Fund to the 159 Settlement Class Members who cashed their second distribution check. ECF No. 87. In support of the current motion, Plaintiff filed a declaration from the Settlement Administrator explaining the administrative cost of completing a third distribution is $2,717, so a third distribution is anticipated to result in an additional payment of approximately $17.98. ECF No. 87-2 ¶¶ 6–7. In addition, Plaintiff seeks approval of two *cy pres* recipients, NCLC and Public Justice, for distribution of any unclaimed funds remaining after the third distribution. ECF No. 87. |

## II.  THIRD DISTRIBUTION

The Ninth Circuit has recognized "additional pro rata distributions to those class members who did claim funds" is a potential alternative for distributing unclaimed settlement funds. *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1110–11 (9th Cir. 2021) (hereinafter "*In re Google*"). A district court has "broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds" and its "choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). "Although the terms of a settlement agreement may dictate how unclaimed settlement funds should be allocated, a district court may otherwise exercise its equitable powers in managing the distribution of the settlement proceeds." *Connor v. JPMorgan Chase Bank, N.A.*, No. 10-cv-1284-GPS-BGS, 2021 WL 1238862, at *1 (S.D. Cal. Apr. 2, 2021).

As this Court previously found in its May 16, 2024 Order, the Settlement Agreement specifically contemplates a *cy pres* distribution only after it is no longer administratively feasible to provide an additional distribution to Settlement Class Members. ECF No. 86 at 4 (citing ECF No. 75-3, Settlement Agreement § III.U). Plaintiff asserts because it is economically feasible to conduct a third distribution to the 159 Settlement Class Members who cashed their second distribution check, a third distribution must occur before a distribution to the proposed *cy pres* beneficiaries is appropriate. ECF No. 87-1 at 9–10.

The Court finds a third distribution is administratively feasible given the amount of uncashed funds ($5,576.40) remaining in the Common Fund following the second distribution. This amount would cover the administrative costs associated with the third distribution in the amount of $2,717. The Court also agrees the third distribution should be limited to the 159 Settlement Class Members who cashed their second distribution Settlement checks. *See In re Google Inc.*, 21 F.4th at 1110–11; *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290-BEN-NLS, 2017 WL 11837070, at *3 (S.D. Cal. Aug. 1, 2017). Accordingly, a third distribution would result in a non-de minimis payment of approximately $17.98 to participating Settlement Class Members. Finally, a third distribution is consistent with the Settlement's terms and directly benefits class members; thus, it is preferable to a *cy pres* distribution in these circumstances. *See Klier v. Elf Atochem N. Am. Inc.*, 658 F.3d 468, 475 (5th Cir. 2011); *see also Connor*, 2021 WL 1238862 at *2 ("Ninth Circuit precedent regarding *cy pres* distributions affirms the Court's view that a second distribution to class members, where possible and not contrary to the aims of the settlement agreement, is often preferable to a *cy pres* distribution") (footnote omitted). Accordingly, the Court **GRANTS** Plaintiff's motion for a third distribution to participating Settlement Class Members who cashed their second distribution check.

### III.   *CY PRES* DISTRIBUTION

Plaintiff also moves for an order approving NCLC and Public Justice as *cy pres* recipients to share in equal parts any funds remaining in the Common Fund after the third distribution. ECF No. 87. Plaintiff asserts the Settlement's terms provide for a *cy pres* distribution to approved beneficiaries for any unclaimed funds, a fourth distribution is not economically feasible, and the Court already preliminarily approved NCLC and Public Justice as *cy pres* beneficiaries. ECF No. 87-1 at 12.

"In the class action context, *cy pres* refers to the practice of distributing settlement funds not amenable to individual claims or meaningful pro rata distribution to nonprofit organizations whose work is determined to indirectly benefit class members." *Frank v. Gaos*, 586 U.S. 485, 490–91 (2019). Under the *cy pres* doctrine, class members "benefit—

albeit indirectly—from a defendant's payment of funds to an appropriate third party." *In re Google Inc.*, 21 F.4th at 1116; *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ("In the context of class action settlements, a court may employ the *cy pres* doctrine to put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.") (citation and quotation marks omitted).

In determining whether a proposed *cy pres* distribution is appropriate, the Court must consider whether the distribution accounts for: (1) the nature of Plaintiff's lawsuit, (2) the objectives of the underlying statutes, and (3) the interests of the silent class members. *See In re Google Inc.*, 21 F.4th at 1116 (quoting *Nachshin*, 663 F.3d at 1036, 1040). The Ninth Circuit has recognized these factors "guide judicial oversight of *cy pres* settlement provisions" and "are designed to ensure that *cy pres* payments particularly 'benefit the plaintiff class.'" *Id.* Overall, the *cy pres* award must have a "direct and substantial nexus to the interests of absent class members[.]" *Id.* (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012)).

As described above, the Settlement Agreement provides for a *cy pres* distribution of any remaining funds in the Common Fund when an additional pro rata distribution is no longer administratively feasible. ECF No. 75-3, Settlement Agreement §§ III.G, III.U. Plaintiff contends a fourth distribution is not administratively and economically feasible. ECF No. 87-1 at 13. Based on the Settlement Administrator's analysis of the check-cashing rates for the initial and second distributions, an estimated $719.20 to $575.36 would remain uncashed after a third distribution. ECF No. 87-2 ¶¶ 8–10. The Settlement Administrator estimates a fourth distribution would have administrative costs of $1,211. *Id.* ¶11. As the anticipated administrative costs are likely to exceed the anticipated uncashed funds remaining after a third distribution, the Court is persuaded a fourth distribution would not be economically or administratively feasible.

Accordingly, the Court must determine whether NCLC and Public Justice are appropriate *cy pres* beneficiaries in this action. Plaintiff filed this class action lawsuit to obtain relief for alleged violations of the FDCPA and RFDCPA. The FDCPA was enacted

1 in response to "abundant evidence of the use of abusive, deceptive, and unfair debt
2 collection practices by many debt collectors" which "contribute to the number of personal
3 bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual
4 privacy." 15 U.S.C. § 1692(a). The FDPCA found existing laws at the time of its enactment
5 were inadequate to protect consumers; thus, its stated purpose is to "eliminate abusive debt
6 collection practices by debt collectors, to insure that those debt collectors who refrain from
7 using abusive debt collection practices are not competitively disadvantaged, and to
8 promote consistent State action to protect consumers against debt collection abuses." 15
9 U.S.C. § 1692(b), (e). Similarly, the RFDCPA's purpose is "to prohibit debt collectors
10 from engaging in unfair or deceptive acts or practices in the collection of consumer debts
11 and small business debts and to require debtors to act fairly in entering into and honoring
12 those debts." Cal. Civ. Code § 1788.1.

      A.     NCLC

NCLC is a 501(c)(3) nonprofit organization "dedicated to consumer protection and the promotion of fairness and justice in the marketplace" and has "a goal of protecting consumers from, and redressing injuries caused by inaccurate, false and misleading statements or omissions by businesses[.]" ECF No. 87-4 ¶¶ 4, 5. NCLC offers resources and trainings to educate consumers and attorneys about unfair debt collection practices including the FDCPA specifically through a legal manual, conferences, trainings, and other publications. *Id.* ¶¶ 6, 9, 12–13. According to a declaration filed by NCLC's Executive Director, any *cy pres* funds awarded from this litigation "would provide training and education to private and legal service attorneys as well as housing counselors related to issues in unfair debt collection, bankruptcy and mortgage servicing as well as keeping related resources up to date." *Id.* ¶ 2.

Plaintiff contends NCLC funds education programs and other resources that inform consumers about their rights and how to protect themselves from unfair, fraudulent, and abusive debt collection practices, which is in line with the nature of this lawsuit. ECF No. 87-1 at 17. The Court agrees the interests of the silent class members would be advanced

through a *cy pres* award to NCLC, as it offers numerous resources and trainings specifically tailored to unfair debt collection practices—the basis of Plaintiff's claims—and the *cy pres* funds would be used for this purpose. Finally, other district courts have approved *cy pres* awards to NCLC in consumer class actions like this one. *See, e.g.*, *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *6 (N.D. Cal. Aug. 7, 2017) (collecting cases); *Karcauskas v. Regreso Fin. Servs. LLC,* No. 15-cv-9225-FMO-RAOX, 2019 WL 13031925, at *6 (C.D. Cal. Nov. 12, 2019) (approving NCLC as *cy pres* beneficiary in FDCPA class action); *Durham v. Cont'l Cent. Credit, Inc.*, No. 07-cv-1763-BTM-WMC, 2011 WL 2173769, at *1 (S.D. Cal. June 2, 2011) (same).

Accordingly, the Court finds NCLC is an appropriate *cy pres* recipient, as a distribution of any funds remaining after a third distribution would have a direct and substantial nexus to the interests of absent Class Members in this case.

**B.     Public Justice**

Public Justice Foundation is a 501(c)(3) non-profit charitable organization that supports the legal work of Public Justice, P.C., a national public interest law firm, and "educates the public about the critical issues that legal work addresses." ECF No. 87-3 ¶ 9. Though the declaration filed by Public Justice's Executive Director indicates generally it "also engage[s] in a variety of legal educational efforts and informal consulting efforts aimed at assisting attorneys who serve consumers seeking redress" and cites to numerous *cy pres* awards in cases that "involved debt collection or other statutory consumer claims[,]" *Id.* ¶¶ 10, 12, 13–20, the Court is not convinced a *cy pres a*ward to Public Justice would properly account for the nature of Plaintiff's lawsuit, the objectives of the FDCPA and RFDCPA, or the interest of the silent class members in this case. The declaration vaguely states Public Justice will use awarded funds "to help advance the rights of consumers throughout the country to be free of illegal practices and to enforce—and help others enforce—consumer rights and consumer protection laws." *Id.* ¶ 3. According to its website, Public Justice "is a nonprofit legal advocacy organization that takes on purveyors of corporate corruption, sexual abusers and harassers, and polluters who ravage the

environment." Who We Are, https://www.publicjustice.net/who-we-are/mission/ (last visited May 6, 2025). Although protecting consumers is one of the areas in which Public Justice focuses its work, the settlement provides no assurance any funds would be used to protect California consumers from unfair debt collection practices specifically, which is the objective of Plaintiff's lawsuit and the underlying statutes. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) ("Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary. To avoid the many nascent dangers to the fairness of the distribution process, [the Ninth Circuit] require[s] that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries.") (quotation marks and citation omitted).

The Court finds Plaintiff has failed to show distribution to Public Justice would have a direct and substantial nexus to the interests of silent Class Members; thus, Plaintiff has not established Public Justice is an appropriate *cy pres* beneficiary in this case.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN SUBSTANIAL PART** Plaintiff's Unopposed Motion for a Third Distribution from the Residual Common Fund and Final Approval of *Cy Pres* Beneficiaries, ECF No. 87, and **ORDERS** as follows:

1. No later than **May 14, 2025**, payment in the amount of $2,717 shall be distributed from the Common Fund to Simpluris, Inc., the Court appointed third-party Settlement Administrator, for the purpose of administering a third distribution.

2. No later than **June 20, 2025**, a third distribution in equal parts shall be made from the remainder of the Common Fund to the 159 Settlement Class Members who cashed their second distribution Settlement checks.

3. The Court **APPROVES** the National Consumer Law Center as a *cy pres* recipient.

4. Should any funds remain following this third distribution (provided that the check cashing rate is higher than 50%), any uncashed funds **SHALL** be distributed to National Consumer Law Center.

//

5. Plaintiff shall file a final accounting with the Court following the third distribution.

**IT IS SO ORDERED**.

Dated: May 6, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge